UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT E. NOELL, JR.,
JENNY NOELLE CHAPMAN,
and LEE'S SUNSHINE VENDING,
INC., a Florida corporation,

       Plaintiffs,

v.   Case No.  8:04-cv-2142-T-24 TBM

BOB WHITE, Sheriff, Pasco County,
Florida, in his official capacity, ET AL.,

       Defendants.
_____/

**ORDER**

This cause comes before the Court on three motions to dismiss. (Doc. No. 42, 25, 47). Plaintiffs oppose these motions.  (Doc. No. 51, 52).

**I.  Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Id. at 47.  All that is required is "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).

**II. Background**

Plaintiffs' suit arises from the arrest of Plaintiff Robert E. Noell, Jr. and Plaintiff Jenny Noell Chapman and the seizure of Plaintiffs' amusement machines. Specifically, Plaintiffs allege the following in their amended complaint (Doc. No. 40): Robert E. Noell, Jr. ("Noell") and Jenny Noell Chapman ("Chapman") are father and daughter. (¶ 1). Plaintiff Lee's Sunshine Vending, Inc. is a Florida corporation, of which Noell is an officer, director, and majority stockholder. (¶ 1). Lee's Sunshine Vending, Inc. owns the Treasure Island Fun Center. (¶ 1). Chapman is employed by Lee's Sunshine Vending to manage the Treasure Island Fun Center. (¶ 1).

Defendants Deputy Janice Thibodeaux, Corporal George Henry, Deputy Brian Beery, and Deputy Richard Jones (collectively referred to as "Pinellas County individual capacity defendants") were at all relevant times employed by the Pinellas County Sheriff's Office. (¶ 6). Defendants Deputy Nick Haynes, Sergeant Howard McCallum, and Deputy Ronnie Bishop (collectively referred to as "Pasco County individual capacity defendants") were at all relevant times employed by the Pasco County Sheriff's Office. (¶ 7). Defendants Special Agent Sharon Feola and Special Agent Denise Sheffield Rose were at all relevant times employed by the Florida Department of Law Enforcement ("FDLE"). (¶ 5).

During the period of 1999 - 2000, Defendant FDLE initiated "Operation Bad Bet," a task force composed of various law enforcement agencies, including the Pinellas County Sheriff's Office and the Pasco County Sheriff's Office. (¶ 10). The purpose of Operation Bad Bet was to investigate and prosecute individuals involved in the amusement game industry for alleged

violations of Chapter 849 of the Florida Statutes, which generally proscribe gambling. (¶ 11). All of the individual capacity defendants[1] were members of the Operation Bad Bet task force, and all of these defendants worked jointly in targeting and investigating Plaintiffs, seizing their property, and ultimately arresting them. (¶ 11).

Operation Bad Bet focused on alleged violations of Florida Statute §§ 849.15 and 849.16. Section 849.15 makes the following unlawful:

> (1) To . . . own . . . possess, . . . , or permit the operation of . . any slot machine . . . .; or
>
> (2) To make or to permit to be made with any person any agreement with reference to any slot machine or device, pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him or her, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value.

Additionally, § 849.16 defines what constitutes a slot machine:

> (1) Any machine . . . is a slot machine . . . if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money . . ., such machine . . . may be operated and if the user, by reason of any element of chance or of any other outcome of such operation unpredictable by him or her, may:
>
>> (a) Receive or become entitled to receive any . . . thing of value . . . ; or
>>
>> (b) Secure additional chances or rights to use such machine . . ..

However, Chapter 849 contains an exemption provision for arcade amusement centers and truck stops, contained in § 849.161, which provides:

> (1)(a)1. Nothing contained in this chapter shall be taken or construed as

---

[1] The individual capacity defendants consist of the Pinellas County individual capacity defendants, the Pasco County individual capacity defendants, and Special Agents Feola and Rose.

applicable to an arcade amusement center having amusement games or machines which operate by means of the insertion of a coin and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise only, excluding cash and alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played.

2. Nothing contained in this chapter shall be taken or construed as applicable to any retail dealer who operates as a truck stop, as defined in chapter 336 and which operates a minimum of 6 functional diesel fuel pumps, having amusement games or machines which operate by means of the insertion of a coin or other currency and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise limited to noncash prizes, toys, novelties, and Florida Lottery products, excluding alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played. This subparagraph applies only to games and machines which are operated for the entertainment of the general public and tourists as bona fide amusement games or machines. . . . This subsection shall not be construed to authorize video poker games or any other game or machine that may be construed as a gambling device under Florida law.

(b) Nothing in this subsection shall be taken or construed as applicable to a coin-operated game or device designed and manufactured only for bona fide amusement purposes which game or device may by application of skill entitle the player to replay the game or device at no additional cost, if the game or device: can accumulate and react to no more than 15 free replays; can be discharged of accumulated free replays only by reactivating the game or device for one additional play for such accumulated free replay; can make no permanent record, directly or indirectly, of free replays; and is not classified by the United States as a gambling device in 24 U.S.C. s. 1171 . . ..This subsection shall not be construed to authorize video poker games, or any other game or machine that may be construed as a gambling device under Florida law.

(2) The term "arcade amusement center" as used in this section means a place of business having at least 50 coin-operated amusement games or machines on premises which are operated for the entertainment of the general public and tourists as a bona fide amusement facility.

Plaintiffs allege that all of the machines owned and operated by them were legal

amusement games that fell within the exemption contained in § 849.161, because the machines

4

(1) were either located in an amusement center or a truck stop, and (2) required, at least in part, the application of skill. (¶ 13, 14, 15). Plaintiffs further allege that all of the individual capacity defendants knew that the machines that they seized from Plaintiffs were legal amusement games that fell within the exemption contained in § 849.161. (¶ 14, 15). Additionally, Plaintiffs allege that all of the individual capacity defendants were aware of a 1995 State of Florida Attorney General Opinion[2] written to a former Pasco County Sheriff that states that while the exemption contained in § 849.161 requires that skill be a factor in determining whether the player is entitled to receive a prize or free plays, the exemption does not appear to require that the outcome of the game be dependent solely on skill. (¶ 15).

In November and December of 1999, Pasco County Sheriff's Deputy Bishop, acting in an undercover capacity and with the assistance of all of the individual capacity defendants, acting in concert with his colleagues Deputy Haynes and Sergeant McCallum, paid five visits to the Flying J Truck Stop. (¶ 17). Plaintiffs allege that the Flying J Truck Stop is a truck stop as defined in § 849.161, since it operated six or more diesel pumps. (¶ 17).

While at the Flying J Truck Stop, Deputy Bishop observed six "Cherry-Plus" amusement games owned by Plaintiffs. (¶ 17). Deputy Bishop played some or all of the Cherry-Plus games, and he received "modest vouchers" as a result of playing, which he redeemed for "various knicknacks." (¶ 17). Deputy Bishop reported his findings to FDLE Special Agent Rose, whose role was to coordinate the various law enforcement agencies and the individual capacity defendants involved in Operation Bad Bet. (¶ 18). Additionally, as a result of the visits to the Flying J Truck Stop, Deputy Haynes stated in an affidavit that he was aware that a Florida

---

[2]Fla. AGO 95-27, 1995 WL 236915 (Fla. A.G.)

appellate court had ruled that Plaintiffs' machines involved an element of skill.  (¶ 16).

On multiple occasions in July through September of 2000 and while under the supervision of Corporal Henry, Deputy Thibodeaux, accompanied by Deputy Jones and assisted by Deputy Beery, visited the Treasure Island Fun Center.  (¶ 20).  Plaintiffs allege that the Treasure Island Fun Center is an arcade amusement center as defined in the exemption contained in § 849.161.  (¶ 20).  Lee's Sunshine Vending owns the Treasure Island Fun Center and all of the machines located therein.  (¶ 21).

During his visits, Deputy Jones played six of the slot machines that were located in the Treasure Island Fun Center.  (¶ 22).  As a result, Deputy Beery, Corporal Henry, Deputy Thibodeaux, and Deputy Jones concluded that the machines located at the Treasure Island Fun Center were illegal.  (¶ 16).  However, Deputy Thibodeaux stated in an affidavit that she was aware that a Florida appellate court had ruled that Plaintiffs' machines involved an element of skill.  (¶ 16).

By September of 2000, FDLE Special Agent Rose's role was assumed by FDLE Special Agent Feola.  (¶ 19).  On September 25, 2000, the participating law enforcement agencies in Operation Bad Bet and all of the individual capacity defendants jointly executed searches and seizures at multiple locations, including the Treasure Island Fun Center, the Flying J Truck Stop, and the corporate offices of Lee's Sunshine Vending.  (¶ 25).  Plaintiffs allege that the individual capacity defendants unlawfully seized amusement machines and documents during the search even though they were aware that the machines were not illegal because they qualified for the exemption contained in § 849.161.  (¶ 27).

On April 20, 2001, the individual capacity defendants arrested Plaintiffs, or aided and

abetted the arrest of Plaintiffs, for various offenses, including first degree felonies of RICO and RICO conspiracy, despite the fact that the individual capacity defendants had no probable cause or arguable probable cause to believe that Plaintiffs committed any criminal offense. (¶ 28, 29). Ultimately, all criminal charges against Plaintiffs were dismissed in their favor, and a circuit court ordered Defendants to return all of the property that was seized by Defendants on September 25, 2000. (¶ 30, 31).

As a result, Plaintiffs assert three claims against Defendants: (1) Count I: § 1983 claim for unreasonable seizure of persons and property against all of the individual capacity defendants; (2) Count II: false arrest against the FDLE, Bob White in his official capacity as Sheriff of Pasco County, and Jim Coats, in his official capacity as Sheriff of Pinellas County; and (3) Count III: § 1983 claim against the FDLE, Bob White in his official capacity as Sheriff of Pasco County, and Jim Coats, in his official capacity as Sheriff of Pinellas County. In response, Defendants filed the instant motions to dismiss.

### III.  Motions to Dismiss

Motions to dismiss were filed by the Pasco County Defendants, the Pinellas County Defendants, and FDLE Special Agents Rose and Feola. Accordingly, the Court will address each motion.

#### A.  Pasco County Defendants

The Pasco County Defendants filed a motion to dismiss all three counts. Accordingly, the Court will analyze their arguments regarding each count.

##### 1.  Count I: § 1983 Claim Against the Individual Capacity Defendants

In Count I, Plaintiffs assert an unreasonable seizure of persons and property claim under

§ 1983 against all of the individual capacity defendants. The Pasco County individual capacity defendants argue that Count I should be dismissed, because Plaintiffs' amended complaint does not comply with the heightened pleading standard regarding their allegations that these defendants unlawfully seized Plaintiffs and their property. Specifically, these defendants argue that Plaintiffs allege that on September 25, 2000, all of the individual capacity defendants executed search warrants at multiple locations, but Plaintiffs do not specify which defendants were at which locations. Additionally, these defendants argue that Plaintiffs fail to specifically allege that these particular defendants seized Plaintiffs or their property. As such, these defendants contend that they have not been put on notice as to which of the allegedly unlawful searches and seizures they are accused of performing. As a result of Plaintiffs' allegedly vague allegations, these defendants claim that they are unable to adequately assert the defense of qualified immunity.

The Eleventh Circuit has applied a heightened pleading standard with respect to § 1983 claims against government officials in their individual capacity in an effort to weed out non-meritorious claims, requiring that such § 1983 plaintiffs allege the facts which make out their claim with some specificity.[3] See GJR Investments, Inc. v. County of Escambia, Florida, 132 F.3d 1359, 1367 (11th Cir. 1998)(citation omitted). In the instant case, the Pasco County individual defendants contend that Plaintiffs' allegations do not sufficiently put them on notice of the specific wrongful acts that they are accused of doing. Upon review of the amended complaint, this Court agrees that more specificity is required. See Harris v. District Board of

---

[3] The Court notes that the heightened pleading standard only applies to Count I of the amended complaint.

Trustees of Polk Community College, 981 F. Supp. 1459, 1462 (M.D. Fla. 1997)(stating that plaintiffs must identify the specific actions taken by each defendant). As such, the Court will dismiss Count I of the amended complaint and grant Plaintiffs leave to file a second amended complaint that identifies (1) which of the individual capacity defendants executed search warrants at which locations, and (2) which of the individual capacity defendants seized Plaintiffs or their property (along with identifying which Plaintiff and/or item property was seized by each defendant).

### 2. Count II: False Arrest Claim Against Defendant White

In Count II, Plaintiffs assert a false arrest claim against Defendant White in his official capacity as Sheriff of Pasco County. Defendant White argues that Count II should be dismissed because Plaintiffs failed to serve the Department of Financial Services ("the Department") with the complaint, as required by Florida Statute § 768.28(7).[4] Plaintiffs respond that this defect is easily cured and that they will serve a copy of the complaint on the Department within seven days after they filed their response to the motion to dismiss.[5] Since presumably this defect has already been cured, the Court rejects Defendant White's argument on this issue.

Defendant White also argues that Count II should be dismissed, because Plaintiffs fail to identify which of the individual capacity defendants arrested which Plaintiffs.[6] The Court agrees

---

[4] Section 768.28(7) provides: "In actions brought pursuant to this section, process shall be served upon the head of the agency concerned and also . . . upon the Department of Financial Services; and the department or the agency concerned shall have 30 days within which to plead thereto."

[5] Plaintiffs' response was filed on April 18, 2005.

[6] Additionally, Defendant White points out that Plaintiffs failed to incorporate their general allegations into Count II.

with this argument and finds that this claim should be dismissed. However, the Court will grant Plaintiffs leave to file a second amended complaint to correct this deficiency.

### 3. Count III: § 1983 Claim Against Defendant White

In Count III, Plaintiffs assert a § 1983 claim against Defendant White. Specifically, Plaintiffs allege that the unlawful seizures of Plaintiffs and their property were caused by the policies and customs of Defendant White, as well as Defendant White's failure to train his agents and employees.

Defendant White argues that Count III should be dismissed because Plaintiffs have failed to establish an underlying constitutional violation. The Court rejects this argument, because it is clear that Plaintiffs are alleging that the seizures of Plaintiffs and their property was done in violation of the Fourth Amendment to the United States Constitution.

Next, Defendant White argues that Count III should be dismissed because Plaintiffs have not explained what policy or custom Defendants Haynes, McCallum, and Bishop were acting under. Plaintiffs respond that they have complied with the notice pleading requirements of Federal Rule of Civil Procedure 8(a). Upon review of the amended complaint, the Court agrees with Plaintiffs and rejects Defendant White's argument on this issue. See, e.g, Myrick v. City of Daphne, No. CIV. A. 00-0311 CBS, 2000 WL 1005831, at *1 (S.D. Ala. July 6, 2000).

Next, Defendant White argues that Count III should be dismissed because Plaintiffs have not alleged with any kind of detail the nature of training that Defendant White failed to provide. Plaintiffs respond that they have complied with the notice pleading requirements of Rule 8(a). The Court, however, finds that Plaintiffs' conclusory allegation that Defendant White failed to train his agents and employees, without allegations as to what kind of training that he

10

allegedly failed to provide, is insufficient to state a claim under § 1983. As such, the Court will grant Defendant White's motion to dismiss Count III as to Plaintiffs' failure to train claim, but the Court will grant Plaintiffs leave to amend this claim to cure this defect.

### B.  Pinellas County Defendants

The Pinellas County Defendants filed a motion to dismiss all three counts.  Accordingly, the Court will analyze their arguments regarding each count.

#### 1.  Count I: § 1983 Claim Against the Individual Capacity Defendants

In Count I, Plaintiffs assert an unreasonable seizure of persons and property claim under § 1983 against all of the individual capacity defendants.  The Pinellas County individual capacity defendants argue that Count I should be dismissed, because Plaintiffs' amended complaint does not comply with the heightened pleading standard regarding the arrests of Plaintiffs. Specifically, these defendants argue that Plaintiffs fail to identify which of the individual capacity defendants physically arrested which Plaintiffs and which of the individual capacity defendants aided and abetted those arrests (and specifically how such defendants aided and abetted those arrests).  Upon review of the amended complaint, this Court agrees that more specificity is required.  As such, the Court will dismiss Count I of the amended complaint and grant Plaintiffs leave to file a second amended complaint that identifies (1) which of the individual capacity defendants arrested which Plaintiffs and (2) which of the individual capacity defendants aided and abetted those arrests (and specifically how such defendants aided and abetted those arrests).

Additionally, the Pinellas County individual capacity defendants argue that Count I should be dismissed to the extent that Plaintiffs Noell and Chapman assert a § 1983 claim for

unlawful seizure of property, since Plaintiffs allege in their complaint that all of the machines at the Treasure Island Fun Center are owned by Plaintiff Lee's Sunshine Vending, Inc.[7] The Court agrees that Chapman and Noell cannot assert a § 1983 claim for unlawful seizure of property regarding machines that they did not own, because they lack standing.

In order to have standing, Plaintiffs must show that they suffered an injury in fact or an invasion of a legally protected interest that is concrete and particularized. See Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1272 (11th Cir. 2003)(citation omitted). However, a person is not entitled to bring a § 1983 claim for harm suffered by a corporation; instead, the person must allege separate harm to himself personally in order to have standing. See Grimm v. Borough of Norristown, 226 F. Supp.2d 606, 631-32 (E.D. Pa. 2002), *order amended by* 2002 WL 737497 (E.D. Pa. Mar 11, 2002). "This is true even where the plaintiff is the sole shareholder of the corporation, its president, or a key employee." Id. at 631; see also Gregory v. Mitchell, 634 F.2d 199, 202 (5th Cir. 1981); Sterngass v. Bowman, 563 F. Supp. 456, 459 (S.D.N.Y. 1983); Diva's, Inc. v. City of Bangor, 176 F. Supp.2d 30, 39 (D. Me. 2001); Jones v. Niagara Frontier Transportation Authority, 836 F.2d 731, 736 (2d Cir. 1987); Webster v. Fulton County, Georgia, 44 F. Supp.2d 1359, 1374 (N.D. Ga. 1999), *aff'd in part, rev'd in part on other grounds,* 283 F.3d 1254 (11th Cir. 2002). Accordingly, Plaintiffs Noell and Chapman lack standing to assert a § 1983 claim relating to the seizure of machines that they did not directly own.

### 2. Count II: False Arrest Claim Against Defendant Coats

---

[7]It is unclear whether all of the machines that were seized were owned by Lee's Sunshine Vending, or whether only the machines located at the Treasure Island Fun Center were owned by Lee's Sunshine Vending.

In Count II, Plaintiffs assert a false arrest claim against Defendant Coats in his official capacity as Sheriff of Pinellas County. Defendant Coats argues that Plaintiffs Chapman and Lee's Sunshine Vending cannot assert a false arrest claim, because (1) Chapman did not comply with the notice requirements contained in Florida Statute § 768.28(6), and (2) there is no allegation in the amended complaint that Plaintiff Lee's Sunshine Vending was arrested. Plaintiffs concede that Chapman and Lee's Sunshine Vending cannot assert a false arrest claim against Defendant Coats.

Additionally, Defendant Coats argues that Plaintiff Noell's false arrest claim should be dismissed, because Plaintiff Noell failed to comply with the notice requirements contained in Florida Statute § 768.28(6). Florida Statute § 768.28(a) provides:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing.

Compliance with this notice requirement is a condition precedent to Plaintiff Noell maintaining his false arrest claim. Fla. Stat. § 768.28(6)(b). Furthermore, because the notice requirement "is part of the statutory waiver of sovereign immunity, it must be strictly construed." Levine v. Dade County School Board, 442 So. 2d 210, 212 (Fla. 1983)(citations omitted).

Defendant Coats argues that Plaintiff Noell's Notice of Claim does not give notice of a false arrest claim; instead, it just gives notice of his claim "for damages suffered as a result of the seizure of certain amusement devices." (Doc. No. 45, Ex. A). Plaintiff Noell responds that he gave notice regarding his false arrest claim, because he mentions in the Notice of Claim that he was arrested. The Court rejects Noell's argument, because he does not state in his Notice of

13

Claim that he is asserting a false arrest claim. As such, the Court finds that Plaintiff Noell's false arrest claim must be dismissed due to his failure to comply with the notice requirement contained in Florida Statute § 768.28(6)(a). Furthermore, the Court notes that this defect cannot be cured, since the notice is required to be given within three years after the claim accrued, and Plaintiff Noell was arrested on April 20, 2001.

Accordingly, the Court finds that all three plaintiffs' claims against Defendant Coats in Count II must be dismissed. As such, the Court grants Defendant Coats' motion to dismiss on this issue.

### 3.  Count III: § 1983 Claim Against Defendant Coats

In Count III, Plaintiffs assert a § 1983 claim against Defendant Coats. Specifically, Plaintiffs allege that the unlawful seizures of Plaintiffs and their property were caused by the policies and customs of Defendant Coats, as well as Defendant Coats' failure to train his agents and employees.

Defendant Coats argues that Count III should be dismissed because Plaintiffs have not explained what policy or custom caused the deprivation of their civil rights. Plaintiffs respond that they have complied with the notice pleading requirements of Federal Rule of Civil Procedure 8(a). Upon review of the amended complaint, the Court agrees with Plaintiffs and rejects Defendant Coats' argument on this issue. See, e.g, Myrick, 2000 WL 1005831, at *1.

Next, Defendant Coats argues that Count III should be dismissed because Plaintiffs have not alleged that Defendant Coats was on notice of a need for training. Plaintiffs respond that they have complied with the notice pleading requirements of Federal Rule of Civil Procedure 8(a). The Court rejects Plaintiffs' argument on this issue.

In order to state a § 1983 claim for failure to train, Plaintiffs must allege that: (1) Defendant Coats knew of a need to train in a particular area, (2) he made a deliberate choice not to do so, and (3) this failure to train constitutes a custom or policy, which was the moving force behind the deprivation of Plaintiffs' constitutional rights. See Roy v. Johnson, 97 F. Supp.2d 1102, 1112 (S.D. Ala. 2000)(citations omitted); see also Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998)(stating that a municipality cannot be held liable for a failure to train unless it was on notice of a need to train in a particular area). As such, the Court agrees with Defendant Coats that Plaintiffs must allege that he was on notice of a need for training in a particular area (and that he made a deliberate choice not to provide such training). Accordingly, the Court will grant Defendant Coats' motion to dismiss Count III as to Plaintiffs' failure to train claim, but the Court will grant Plaintiffs leave to amend this claim to cure this defect.

### C. Defendants Rose and Feola

Defendants Rose and Feola are alleged to have been responsible for coordinating the various law enforcement agencies and all of the individual capacity defendants involved in Operation Bad Bet. (Doc. No. 40, ¶ 18). Defendants Rose and Feola move to dismiss the § 1983 claims in Count I–the only count asserted against them.

Defendant Rose contends that the claims asserted against her in Count I should be dismissed, because her role in Operation Bad Bet was taken over by Defendant Feola prior to the allegedly unlawful searches and seizures. The Court notes that Plaintiffs allege that all of the individual capacity defendants were involved in the allegedly unlawful searches and seizures; however, it is unclear how Defendant Rose could have been involved in the allegedly unlawful searches and seizures, given that her role was assumed by Defendant Feola prior to their

15

occurrence and there is no allegations of specific conduct undertaken by Defendant Rose that caused the allegedly unlawful actions. See Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560-61 (11th Cir. 1993)(stating that "[s]upervisors can be liable under section 1983 only if they actually participated in the allegedly wrongful act, or if a causal connection exists between their acts and the alleged violation"). As such, the Court dismisses the claims asserted against Defendant Rose in Count I.

Defendant Feola argues that Count I should be dismissed, because Plaintiffs' amended complaint does not comply with the heightened pleading standard. Specifically, Feola argues that Plaintiffs fail to (1) allege facts showing that Feola knew that she had no probable cause to search, seize, and arrest, or that she was reckless in making such determination (or that she even was involved in making the determination); (2) allege facts showing that Feola was aware of facts that supported the conclusion that the machines at issue qualified for the exemption contained in § 849.161; (3) allege facts supporting Plaintiffs' conclusory allegations that (a) the Treasure Island Fun center qualified as an arcade amusement center, (b) the machines at issue required, at least in part, the application of skill (i.e., by explaining how skill is involved)[8], (c) Defendants lacked arguable probable cause, (d) all of the defendants "worked jointly" in targeting, investigating, seizing, and arresting Plaintiffs and their property (i.e., Plaintiffs fail to identify what, specifically, each defendant did), (e) the machines at issue qualified for an exemption[9]; (4) allege the reasons for the dismissal of the charges against them, and (5) allege

---

[8] Furthermore, it is unclear exactly what type of machines were involved in this case.

[9] For example, Plaintiffs do not allege that the games paid off in coupons that could be redeemed for prizes having a value of less than seventy-five cents (a requirement to be entitled to the exemption). Instead, Plaintiffs allege that the players earned "modest vouchers" that could

facts showing a causal connection between Feola and the allegedly unlawful acts.[10]

Upon review of the amended complaint, this Court agrees that more specificity is required. As such, the Court will dismiss Count I of the amended complaint and grant Plaintiffs leave to file a second amended complaint that cures the deficiencies described above.

## IV.  Conclusion

For the reasons stated above, the Court finds that Count I should be dismissed for failing to satisfy the heightened pleading standard for § 1983 claims against government officials sued in their individual capacity. However, the Court will allow Plaintiffs to file a second amended complaint. In amending Count I, Plaintiffs must include allegations that: (1) identify which of the individual capacity defendants executed search warrants at which locations; (2) identify which of the individual capacity defendants seized Plaintiffs or their property (along with identifying which Plaintiff and/or item property was seized by each defendant); (3) identify which of the individual capacity defendants arrested which Plaintiffs; (4) identify which of the individual capacity defendants aided and abetted those arrests (and specifically how such defendants aided and abetted those arrests); (5) identify the owner(s) of all of the machines at issue; (6) show that Feola knew that Defendants had no probable cause to search, seize, and arrest, or that she was reckless in making such determination (and that she even was involved in making the determination); (7) show that Defendants were aware of facts that supported the conclusion that the machines at issue qualified for the exemption contained in § 849.161; (8)

---

be exchanged for "knickknacks."

[10]Defendant Rose argues that Count I should be dismissed against her for these same reasons.

support the conclusory allegations that (a) the Treasure Island Fun center qualified as an arcade amusement center, (b) the machines at issue required, at least in part, the application of skill (i.e., by explaining how skill is involved), (c) that Defendants lacked arguable probable cause, (d) that all of the defendants "worked jointly" in targeting, investigating, seizing, and arresting Plaintiffs and their property (i.e., Plaintiffs should identify what, specifically, each defendant did), and (e) the machines at issue qualified for an exemption; (9) allege the reasons for the dismissal of the charges against them, and (10) allege facts showing a causal connection between Feola and the allegedly unlawful acts.[11]

Additionally, as explained above, the Court finds that Count II should be dismissed as to Defendants White and Coats. However, the Court will allow Plaintiffs to file a second amended complaint to amend Count II regarding Noell's false arrest claim against Defendant White. In amending Count II, Plaintiffs must include allegations identifying which of the individual capacity defendants arrested which Plaintiffs, and Plaintiffs should incorporate their general allegations into Count II.

Additionally, as explained above, the Court finds that Plaintiffs' failure to train claim in Count III should be dismissed. However, the Court will allow Plaintiffs to file a second amended complaint to amend Count III. In amending Count III, Plaintiffs must (1) identify the area in which there was a need for training, (2) allege that Defendants White, Coats, and the FDLE was on notice of a need for training in that area, and (3) allege that they made a deliberate choice not to provide such training.

---

[11] If Plaintiffs attempt to amend the complaint to include claims against Defendant Rose, they must cure all of the deficiencies described above as to Defendant Rose also.

Accordingly, it is ORDERED AND ADJUDGED that:

(1) The Pasco County Defendants' Motion to Dismiss (Doc. No. 42) is **GRANTED IN PART AND DENIED IN PART**, as explained above.

(2) The Pinellas County Defendants' Motion to Dismiss (Doc. No. 45) is **GRANTED IN PART AND DENIED IN PART**, as explained above.

(3) Defendants Rose and Feola's Motion to Dismiss (Doc. No. 47) is **GRANTED**;

(4) Plaintiffs may file a second amended complaint that corrects the defects described above, as long it is filed on or before May 31, 2005.

**DONE AND ORDERED** at Tampa, Florida, this 12th day of May, 2005.

/s/ Susan C. Bucklew
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record