UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT E. NOELL, JR.,
JENNY NOELLE CHAPMAN,
and LEE'S SUNSHINE VENDING,
INC., a Florida corporation,

        Plaintiffs,

v.                                   Case No.  8:04-cv-2142-T-24 TBM

BOB WHITE, Sheriff, Pasco County,
Florida, in his official capacity, ET AL.,

        Defendants.
_____/

## ORDER

      This cause comes before the Court on three motions to dismiss Plaintiffs' second

amended complaint (Doc. Nos. 65, 66 and 68).  Plaintiffs have filed a consolidated response in

opposition to these motions (Doc. No. 73).

## I.    Background and Procedural History

      Plaintiffs' suit arises from the arrest of Plaintiff Robert E. Noell, Jr. and Plaintiff Jenny

Noell Chapman and the seizure of amusement machines.  Specifically, Plaintiffs[1] allege the

following in their second amended complaint (Doc. No. 59): Robert E. Noell, Jr. ("Noell") and

Jenny Noell Chapman ("Chapman") are father and daughter (¶ 1).  Lee's Sunshine Vending, Inc.

is a Florida corporation, of which Noell is an officer, director, and majority stockholder (¶ 1).

Lee's Sunshine Vending, Inc. owns the Treasure Island Fun Center, which is an arcade

amusement center, and various amusement machines located at the Flying J Travel Plaza truck

_____

      [1]The Court notes that Lee's Sunshine Vending, Inc. is no longer a Plaintiff in this action.

stop (¶ 1). Chapman is employed by Lee's Sunshine Vending to manage the Treasure Island Fun Center (¶ 1). Plaintiffs derived a substantial portion of their income from proceeds generated by amusement machines, including those amusement machines seized in this case (¶1).

Defendants Deputy Janice Thibodeaux ("Thibodeaux"), Corporal George Henry ("Henry"), Deputy Brian Beery ("Beery"), and Deputy Richard Jones ("Jones")(collectively referred to as "Pinellas County individual capacity defendants") were at all relevant times employed by the Pinellas County Sheriff's Office (¶ 6). Defendants Deputy Nick Haynes ("Haynes"), Sergeant Howard McCallum ("McCallum"), and Deputy Ronnie Bishop ("Bishop")(collectively referred to as "Pasco County individual capacity defendants") were at all relevant times employed by the Pasco County Sheriff's Office (¶ 7). Defendant Special Agent Sharon Feola ("Feola") was at all relevant times employed by the Florida Department of Law Enforcement ("FDLE") (¶ 5).

During the period of 1999 - 2001, Defendant FDLE initiated "Operation Bad Bet," a task force composed of various law enforcement agencies, including the Pinellas County Sheriff's Office and the Pasco County Sheriff's Office (¶¶5 and 10). The purpose of Operation Bad Bet was to investigate and prosecute individuals involved in the amusement game industry for alleged violations of Chapter 849 of the Florida Statutes, which generally proscribe gambling (¶ 13). One of the primary targets of the task force were "Cherry Masters" video machines, which were among the amusement games owned by Lee Sunshine Vending (¶13). Feola was the agent in charge of the task force. (¶¶5 and 10). All of the individual capacity defendants[2] were

---

[2]The individual capacity defendants consist of the Pinellas County individual capacity defendants, the Pasco County individual capacity defendants, and Feola.

members of the Operation Bad Bet task force, and all of these defendants worked jointly in

investigating and arresting Plaintiffs, and in seizing the amusement games (¶¶ 6, 7 and 13).

Operation Bad Bet focused on alleged violations of FLA. STAT. §§ 849.15 and 849.16,

which prohibit slot machines (¶14).  Section 849.15 makes the following unlawful:

> (1) To . . . own . . . possess, . . . , or permit the operation of . . any slot machine . . .; or
>
> (2) To make or to permit to be made with any person any agreement with reference to any slot machine or device, pursuant to which the user thereof, as a result of any element of chance or other outcome unpredictable to him or her, may become entitled to receive any money, credit, allowance, or thing of value or additional chance or right to use such machine or device, or to receive any check, slug, token or memorandum entitling the holder to receive any money, credit, allowance or thing of value.

Additionally, § 849.16 defines what constitutes a slot machine:

> (1) Any machine . . . is a slot machine . . . if it is one that is adapted for use in such a way that, as a result of the insertion of any piece of money . . ., such machine . . . may be operated and if the user, by reason of any element of chance or of any other outcome of such operation unpredictable by him or her, may:
>
>> (a) Receive or become entitled to receive any . . . thing of value . . . ; or
>>
>> (b) Secure additional chances or rights to use such machine . . ..

However, Chapter 849 contains an exemption provision for arcade amusement centers and truck

stops, contained in § 849.161, which provides:

> (1)(a)1. Nothing contained in this chapter shall be taken or construed as applicable to an arcade amusement center having amusement games or machines which operate by means of the insertion of a coin and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise only, excluding cash and alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played.
>
> 2. Nothing contained in this chapter shall be taken or construed as applicable to

any retail dealer who operates as a truck stop, as defined in chapter 336 and which operates a minimum of 6 functional diesel fuel pumps, having amusement games or machines which operate by means of the insertion of a coin or other currency and which by application of skill may entitle the person playing or operating the game or machine to receive points or coupons which may be exchanged for merchandise limited to noncash prizes, toys, novelties, and Florida Lottery products, excluding alcoholic beverages, provided the cost value of the merchandise or prize awarded in exchange for such points or coupons does not exceed 75 cents on any game played. This subparagraph applies only to games and machines which are operated for the entertainment of the general public and tourists as bona fide amusement games or machines. . . . This subsection shall not be construed to authorize video poker games or any other game or machine that may be construed as a gambling device under Florida law.

(b) Nothing in this subsection shall be taken or construed as applicable to a coin-operated game or device designed and manufactured only for bona fide amusement purposes which game or device may by application of skill entitle the player to replay the game or device at no additional cost, if the game or device: can accumulate and react to no more than 15 free replays; can be discharged of accumulated free replays only by reactivating the game or device for one additional play for such accumulated free replay; can make no permanent record, directly or indirectly, of free replays; and is not classified by the United States as a gambling device in 24 U.S.C. s. 1171 . . ..This subsection shall not be construed to authorize video poker games, or any other game or machine that may be construed as a gambling device under Florida law.

(2) The term "arcade amusement center" as used in this section means a place of business having at least 50 coin-operated amusement games or machines on premises which are operated for the entertainment of the general public and tourists as a bona fide amusement facility.

Plaintiffs allege that all of the machines owned and operated by them were legal amusement games that fell within the exemption contained in § 849.161, because (1) the machines were either located in an amusement center or a truck stop, (2) persons winning on the machines in question received a prize or other reward worth no more the 75 cents, and (3) the machines required, at least in part, the application of skill.  (¶¶15 - 18).  Plaintiffs further allege that all of the individual capacity defendants knew, or reasonably should have been aware, that the machines that they seized from Plaintiffs were legal amusement games that fell within the

exemption contained in § 849.161  (¶¶ 15 - 18 ).  Additionally, Plaintiffs allege that all of the individual capacity defendants were aware of a 1995 State of Florida Attorney General Opinion[3] ("AGO 95-27") written to a former Pasco County Sheriff that states that while the exemption contained in § 849.161 requires that skill be a factor in determining whether the player is entitled to receive a prize or free plays, the exemption does not appear to require that the outcome of the game be dependent solely on skill  (¶ 17).

Between November 1999 and September 2000, Haynes, Bishop and Beery, working undercover, paid multiple visits to the Flying J Travel Plaza and operated the allegedly unlawful amusement games (¶ 26).  Haynes, Bishop, and Beery reported their findings to McCallum[4] and other members of the task force. Plaintiffs allege that the Flying J Truck Plaza is a truck stop as defined in § 849.161(1)(a)(2) (¶16).

Between June and September of 2000, Jones and Beery, working undercover, paid multiple visits to the Treasure Island Fun Center and operated the allegedly unlawful amusement games (¶25).  Jones and Beery reported their finds to Thibodeaux and Henry[5] and other members of the task force.  Plaintiffs allege that the Treasure Island Fun Center is an arcade amusement center as defined in the exemption contained in § 849.161(1)(a)(1) (¶ 16).

The undercover visits targeted a total of thirteen amusement games, seven at the Treasure Island Fun Center and six at the Flying J Truck Plaza.  The amusement games are known as

---

[3]Fla. AGO 95-27, 1995 WL 236915 (Fla. A.G.)

[4]McCallum was supervisor of the Pasco County Sheriff's Office vice intelligence unit and supervised Haynes and Bishop (¶23).

[5]Henry was supervisor of the Pinellas County Sheriff's Office vice unit and supervised Jones, Beery and Thibodeaux (¶20).

"Cherry Masters" or "Cherry Pluses," and are owned by Lee's Sunshine Vending, Inc. (¶27). Plaintiffs allege that the members of the task force jointly decided to seize the amusement games and personal property (¶28).

On September 25, 2000, with the assistance of other law enforcement officers and the approval of Thibodeaux and Henry, Jones and Beery seized seven amusement games from the Treasure Island Fun Center without a warrant (¶29).  On the same day, with the assistance of other law enforcement officers and the approval of the remaining individual capacity defendants, McCallum and Bishop executed a search warrant at the Flying J Truck Plaza in Pasco County and Jones executed a search warrant on the corporate office in Pinellas County (¶32).  Plaintiffs' personal property and documents were seized from Lee's Sunshine Vending, Inc.'s corporate office and six Cherry Master amusement games, and almost $5,000.00 in proceeds were seized, from the Flying J Travel Plaza (¶32).

The affidavits in support of the search warrants were signed by Thibodeaux and Haynes. Plaintiffs allege the affidavits were identical and in fact averred the allegedly unlawful machines required an element of skill.  Plaintiffs allege the affidavits also did not inform the state court judges that statutory exceptions existed for amusement centers and truck stops (¶¶30 and 31). The affidavits contained the following language:

> The issue of whether these type of gaming machines were considered to be coin operated gambling device the possession of which violated state statute 849.15 was addressed by the Fourth District Court of Appeal, State of Florida, *State of Florida Department of Business & Professional Regulation, Division of Alcoholic Beverage and Tobacco vers[u]s Broward Vending, Inc.* 696 So. 2d 851 (4DCA 1997).  In the aforementioned opinion, the Fourth District Court of Appeal found the following:
> "In the Instant Case, the owner of the machine admitted that chance is an element of the game.  Indeed, if the player does not

> manipulate the levers to improve the score, the machine is preset for the player to win 55% of the time, although the percentage could be modified by an adjustment of the machine.  While skill will significantly improve the player's winning percentage, it does not eliminate the element of chance in the machine itself.  The machine is not like a bowling machine, which requires solely the skill of the player to slide the puck and knock down the pins, to the machine merely tabulating the score.  Here, the game is set to play itself and to record a certain win/loss ration.  Thus the element of chance is inherent in the game"

(¶¶18 and 31).

In April 2001, the individual capacity defendants[6] arrested Plaintiffs, or aided and abetted the arrest of Plaintiffs, for various gambling and RICO violations.  Plaintiffs allege that the individual capacity defendants had no probable cause or arguable probable cause to believe that Plaintiffs had committed any criminal offense.  (¶¶35 - 38).  Prior to their state court trial, Noell and Chapman filed a motion to suppress evidence seized from the offices of Lee's Sunshine Vending, Inc. and from the Flying J Travel Plaza (¶39).  The state court granted the motion to suppress, finding that the failure to inform the judges who signed the warrants of the existence of statutory exemptions was a material omission and constituted a Fourth Amendment violation (¶41).  Ultimately the case against Noell and Chapman was dismissed on jurisdictional grounds (¶¶42 and 43).

On May 12, 2005, this Court entered an Order dismissing Plaintiffs' First Amended Complaint but permitted Plaintiffs to file a second amended complaint (Doc. No. 55).[7]  Plaintiffs

---

[6]Thibodeaux and Jones arrested Chapman and a law enforcement officer who had no involvement in the task force arrested Noell.

[7]Specifically, the Court found that Count I should be dismissed for failing to satisfy the heightened pleading standard for § 1983 claims against government officials sued in their individual capacity.  The Court directed that in amending Count I, Plaintiffs must include

now assert two claims against Defendants: (1) Count I: § 1983 claim for unreasonable seizure of persons and property against all of the individual capacity defendants and (2) Count II: § 1983 claim against the FDLE,[8] Bob White in his official capacity as Sheriff of Pasco County, and Jim Coats, in his official capacity as Sheriff of Pinellas County.  In response, Defendants filed the instant motions to dismiss.

## II.    Standard of Review

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

---

allegations that: (1) identify which of the individual capacity defendants executed search warrants at which locations; (2) identify which of the individual capacity defendants seized Plaintiffs or their property (along with identifying which Plaintiff and/or item property was seized by each defendant); (3) identify which of the individual capacity defendants arrested which Plaintiffs; (4) identify which of the individual capacity defendants aided and abetted those arrests (and specifically how such defendants aided and abetted those arrests); (5) identify the owner(s) of all of the machines at issue; (6) show that Feola knew that Defendants had no probable cause to search, seize, and arrest, or that she was reckless in making such determination (and that she even was involved in making the determination); (7) show that Defendants were aware of facts that supported the conclusion that the machines at issue qualified for the exemption contained in § 849.161; (8) support the conclusory allegations that (a) the Treasure Island Fun center qualified as an arcade amusement center, (b) the machines at issue required, at least in part, the application of skill (i.e., by explaining how skill is involved), (c) that Defendants lacked arguable probable cause, (d) that all of the defendants "worked jointly" in targeting, investigating, seizing, and arresting Plaintiffs and their property (i.e., Plaintiffs should identify what, specifically, each defendant did), and (e) the machines at issue qualified for an exemption; (9) allege the reasons for the dismissal of the charges against them, and (10) allege facts showing a causal connection between Feola and the allegedly unlawful acts.  Additionally, the Court found that Plaintiffs' failure to train claim in Count III should be dismissed.  In amending Count III, the Court directed that Plaintiffs must (1) identify the area in which there was a need for training, (2) allege that Defendants White, Coats, and the FDLE was on notice of a need for training in that area, and (3) allege that they made a deliberate choice not to provide such training.

[8]On July 22, 2005, this Court entered an Order dismissing Plaintiffs' claims against FDLE (Doc. No. 75).

962 (11th Cir. 2000)(citing <u>Kirby v. Siegelman</u>, 195 F.3d 1285, 1289 (11th Cir. 1999)).  A complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim.  <u>Id.</u> at 47.  All that is required is "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2).

## III.   Motions to Dismiss Plaintiffs' Second Amended Complaint

Motions to dismiss were filed by the Pinellas County Defendants, the Pasco County Defendants, and Feola.  Accordingly, the Court will address each ground for dismissal.

### A.   Count I: §1983 Claim Against the Individual Capacity Defendants

In Count I, Plaintiffs assert an unreasonable seizure of persons and property claim under §1983 against all of the individual capacity defendants.

#### 1.   Plaintiffs Lack Standing to Maintain a Claim for Unlawful Seizure of Property

The Pinellas County and Pasco County individual capacity defendants argue that Count I should be dismissed to the extent that Plaintiffs assert a §1983 action for unlawful seizure of property, i.e., the "Cherry Masters" or "Cherry Pluses" machines.  Specifically, in their Second Amended Complaint Plaintiffs allege that "Plaintiffs' machines . . . are owned by Lee's Sunshine Vending, Inc." (¶27).  Additionally, the Pasco County individual capacity defendants argue that Plaintiffs have not alleged that they own or have a legal right to the "almost $5,000.00 in proceeds" seized from the Flying J Travel Plaza.  This Court agrees that Plaintiffs lack standing to assert a §1983 claim relating to the unlawful seizure of property they did not directly own.

9

Plaintiffs lack standing to assert a claim for the unlawful seizure of property and monies owned by Lee's Sunshine Vending, Inc.  See Cheney v. Cyberguard Corp., 213 F.R.D. 484, 495 (S.D. Fla. 2003); see also Gregory v. Mitchell, 634 F.2d 199, 202 (5th Cir. 1981).  That Noell and Chapman may have derived substantial income from the machines, as a corporate officer and employee respectively, does not create an exception to this legal principle.  See Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987); see also Webster v. Fulton County, Georgia, 44 F. Supp. 2d 1359, 1374 (N.D. Ga. 1999), *aff'd in part, rev'd in part on other grounds*, 283 F.3d 1254 (11th Cir. 2002).

## 2.   The Individual Capacity Defendants are Entitled to Qualified Immunity

Almost all of the individual capacity defendants argue that Plaintiffs have failed to comply with the heightened pleading requirement for Plaintiffs suing governmental officials in their individual capacities.[9]  Additionally, each of the individual capacity defendants contends that he is entitled to qualified immunity.  This Court agrees with the individual capacity defendants that they are entitled to qualified immunity.

At the motion to dismiss stage, the qualified immunity inquiry and Rule 12(b)(6) standard become intertwined.  See GJR Investments, Inc. v. County of Escambia, Florida, 132 F.3d 1359, 1366 (11th Cir. 1998)(citation omitted).   Specifically, The Eleventh Circuit has applied a heightened pleading standard with respect to § 1983 claims against government officials in their individual capacity in an effort to weed out non-meritorious claims, requiring that such § 1983 plaintiffs allege the facts which make out their claim with some specificity. Id.

---

[9]Only Jones does not specifically argue Plaintiffs have failed to meet the §1983 heightened pleading standard.

at 1367.[10]    Therefore, Plaintiffs' Second Amended Complaint must include "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity."    Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003)(quoting Venney v. Hogan, 70 F.3d 917, 922 (6th Cir. 1995)).

### a.    Qualified Immunity Generally

"Qualified immunity protects government officials, in their individual capacities, from suit unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances."    Pace v. Capobianco, 283 F.3d 1275, 1282 (11th Cir. 2002). In other words, "[t]he standard of objective reasonableness which is used to assess an officer's entitlement to qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'"    Priester v. City of Riviera Beach, 208 F.3d 919, 925 (11th Cir. 2000)(quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).    Because of the important public policies underlying the defense of qualified immunity, "'courts should think long and hard before stripping defendants of immunity.'"    Ray v. Foltz, 370 F.3d 1079, 1082 (11th Cir. 2004)(quoting Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1149 (11th Cir. 1994)).

"The defense of qualified immunity may be raised and addressed on a motion to dismiss and will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'"    Snider v. Jefferson State Community College, 344 F.3d 1325, 1327 (11th Cir. 2003)(quoting Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001)).    In fact, questions

_____

[10]The Court notes that the heightened pleading standard only applies to Count I of the amended complaint.

11

of qualified immunity should be resolved at the earliest stage in the litigation.  See Dalrymple, 334 F.3d at 994.

For qualified immunity to apply, the government official must first prove that he was acting within his discretionary authority.  See Cottone v. Jenne, 326 F.3d 1352, 1357-58 (11th Cir. 2003).  "'A governmental official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority.'"  Grayden v. Rhodes, 345 F.3d 1225, 1231 n.12 (11th Cir. 2003)(quoting Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1885 n. 17 (1994)); see also Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).  In this case, it is clear from the face of the Second Amended Complaint, and Plaintiffs do not dispute, that the individual capacity defendants were acting in their discretionary authority.  Thus, the burden shifts to Plaintiffs to show that the individual capacity defendants are not entitled to qualified immunity.  See Cottone, 326 F. 3d at 1358.

The Supreme Court has outlined the following two-prong test for determining if an officer is entitled to qualified immunity: (1) taking all of the facts in the light most favorable to the plaintiff, do the facts demonstrate a violation of a constitutional right, and (2) if so, was that constitutional right "clearly established?"  See Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).  For a constitutional right to be clearly established, a plaintiff must show that "'when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood that his acts were unlawful.'" Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir.1997)(quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993)).

Importantly, in a case such as this one where Plaintiffs argue the officers lacked probable cause, for qualified immunity to be applicable an officer need only have arguable probable cause rather than actual probable cause to support his actions.  See Lee, 284 F. 3d at 1196.  "The standard for arguable probable cause is 'whether a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law.'" Gold, 121 F.3d at 1445 (quoting Eubanks v. Gerwen, 40 F.3d 1157, 1160 (11th Cir. 1994)).   With these principles in mind, the Court will examine the issues presented in this case.

      **b.**    **The Individual Capacity Defendants Did Not Violate Clearly Established Law**

"In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins by Hall v. Halladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997); see also Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998).

Plaintiffs' claims are premised on their assertion that the individual capacity defendants knew that the "Cherry Masters" or "Cherry Pluses" machines that were seized fell within the exemption created by § 849.161 since the operation of the machines requires, at least in part, the application of skill (¶¶15 and 17).  Plaintiffs rely heavily on a State of Florida Attorney General Opinion, AGO 95-27 dated April 18, 1995 ("AGO 95-27"), to support their contention that the individual capacity defendants were "expressly aware that plaintiffs' machines required an element of skill" (¶18).  However, an Attorney General's opinion is not binding on a court.  See WFTV, Inc. v. Wilken, 675 So.2d 674, 678  n. 5 (Fla. 4th DCA 1996).

The question is whether a reasonably prudent officer had arguable probable cause to

believe that the amusement games, i.e. "Cherry Masters" or "Cherry Pluses," were illegal.

Probable cause is a "'practical nontechnical conception that deals with the factual and practical

considerations of everyday life on which reasonable and prudent men, not legal technicians,

act.'" Maryland v. Pringle, 540 U.S. 366, 370 (2003)(quoting Illinois v. Gates, 462 U.S. 213, 231

(1983));see also Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990).  Here, a reasonable

law enforcement officer could have believed that the amusement games seized were not exempt

under §849.161.

The crux of Plaintiffs' argument is that by failing to inform the state court judges of the

existence of a statutory exemption for amusement games found in § 849.161,[11] "defendants

failed to provide these judges an opportunity to determine the quantum of skill for the

amusement games to qualify for the exemption" (Doc. No. 73).  However, since Plaintiffs

concede that there is some question regarding the level of skill required for a machine to qualify

for the exemption created by § 849.161, their §1983 claim against the individual capacity

defendants must fail on the ground of qualified immunity.  Section 849.161 does not, on its face,

specify the degree to which skill must determine the outcome of the game such that the

exemption would apply.  Application of the statute is open to interpretation because it does not

make clear whether skill must be the predominant or determinant factor in the outcome of a

game, or merely a minor or relatively inconsequential factor.

Despite Plaintiffs' arguments to the contrary, AGO 95-27 does not resolve this

ambiguity.  In AGO-95-27, the Attorney General opined that the machine at issue did not fall

---

[11]The language utilized in the search warrant affidavits came from the Broward Vending case.  However, in that case the court applied § 849.15, not §849.161, and therefore dealt with the prohibition of slot machines and not the exemption for arcades and truck stops.

within the exemption created by §849.161, since "the mere pushing of a button marked 'skill' would not, in and of itself, appear to constitute the application of skill for purposes of qualifying for the exemption in section 849.161, Florida Statutes."  AGO 95-27 did not address the degree to which skill, as opposed to chance, must dictate the outcome of the game.  Furthermore, AGO 95-27 is not a decision by the U.S. Supreme Court, the Eleventh Circuit Court of Appeals, or the Florida Supreme Court, and as such it cannot be the basis for an argument that the law is clearly established.

In the present case, despite this Court's direction that Plaintiffs explain how skill is involved with respect to the machines seized, Plaintiffs fail to specify how skill is involved in playing "Cherry Masters" or "Cherry Pluses" machines.   Since there is no clearly established law interpreting § 849.161, and Plaintiffs fail to allege how skill is involved with respect to the machines seized, the Plaintiffs cannot overcome the qualified immunity protection accorded the individual capacity defendants.

**B.       Count II: §1983 Claim Against Defendants White and Coats**

In Count II, Plaintiffs assert a §1983 claim against Defendants White and Coats. Specifically, Plaintiffs allege that the unlawful arrest of Plaintiffs and seizure of their property were caused by the policies and customs of Defendant White, the Sheriff of Pasco County, and Defendant Coats, the Sheriff of Pinellas County, as well as their failure to train their agents and employees.

In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court held that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Id. at 694.  Respondeat superior or vicarious liability will not attach

under § 1983.   "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." City of Springfield v. Kibbe, 480 U.S. 257, 267 (1987) (O'Connor, J., dissenting)(quoting Monell, 436 U.S. at 694). Here Plaintiffs have not sufficiently identified any policy or custom that caused a constitutional deprivation.

In addition, governmental policy generally cannot be established by evidence of a single incident.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 821 (1985); Cannon v. Taylor, 782 F.2d 947, 951 (11th Cir. 1986); Cummings v. Palm Beach County, 642 F. Supp. 248, 251 (S.D. Fla. 1986).  Plaintiffs' case rests on an isolated incident without any evidence of a pattern of similar incidents and, therefore, cannot support liability under § 1983.

The Supreme Court in City of Canton, Ohio v. Harris, 489 U.S. 378 (1989), found that there are limited circumstances in which an allegation of "failure to train" can be a basis for liability under § 1983.  Id. at 387.  Specifically, "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389.

Therefore, in order to state a § 1983 claim for failure to train, Plaintiffs must allege that: (1) White and Coats knew of a need to train in a particular area, (2) they made a deliberate choice not to do so, and (3) this failure to train constitutes a custom or policy, which was the moving force behind the deprivation of Plaintiffs' constitutional rights.  See Roy v. Johnson, 97 F. Supp.2d 1102, 1112 (S.D. Ala. 2000)(citations omitted); see also Gold v. City of Miami, 151 F.3d 1346, 1351 (11th Cir. 1998)(stating that a municipality cannot be held liable for a failure to

16

train unless it was on notice of a need to train in a particular area).  Plaintiffs' Second Amended

Complaint fails to allege these elements.  Specifically, with respect to Plaintiffs' failure to train

claim, the Second Amended Complaint merely alleges: "[i]t is clear that the need for training

was so obvious in these circumstances that the failure of the defendant agencies to provide that

training constituted deliberate indifference to plaintiff's Fourth Amendment rights" (¶54).  The

Second Amended Complaint fails to allege any factual basis for inferring that White or Coats

were aware of any need for training and made a deliberate choice not to provide it.

## IV.  Conclusion

Plaintiffs lack standing to assert a §1983 claim relating to the seizure of machines or

proceeds they did not directly own.  Furthermore, the allegations contained in Plaintiffs' Second

Amended Complaint are not sufficient to overcome the qualified immunity protection accorded

the individual capacity defendants.  Lastly, Plaintiffs have not identified any policy or custom

that caused a constitutional deprivation and cannot establish that White and Coats were aware

of any need for training and made a deliberate choice not to provide it.  Accordingly, it is

**ORDERED AND ADJUDGED** that:

(1)    The Pinellas County Defendants' Motion to Dismiss Plaintiffs' Second Amended

Complaint (Doc. No. 65) is **GRANTED**.

(2)    The Pasco County Defendants' Motion to Dismiss Plaintiffs' Second Amended

Complaint (Doc. No. 66) is **GRANTED**.

(3)    Defendant Feola's Motion to Dismiss Plaintiffs' Second Amended Complaint

(Doc. No. 68) is **GRANTED**.

(4)    The Clerk is directed to **CLOSE** this case and **TERMINATE** any pending

17

motions.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of October, 2005.

_Susan C. Bucklew_
SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record